# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| **NIDA M. EASTER** | **CIVIL ACTION NO. 14-0967** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **CHARLIE CALDWELL, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## <u>MEMORANDUM RULING</u>

Before this Court are Motions To Dismiss submitted by Chief Willie Shaw of the Shreveport Police Department ("Chief Shaw"), Shreveport City Marshal Charlie Caldwell, Jr. ("City Marshal Caldwell"), and Sheriff Steve Prator of the Caddo Parish Sheriff's Office ("Sheriff Prator"). [Record Documents 8, 12, and 14]. The Plaintiff, Nida M. Easter, filed suit against each of these Defendants in his official capacity,[1] seeking both federal and state relief for purported violations of her Fourth Amendment rights. [Record Document 1]. Whereas City Marshal Caldwell and Sheriff Prator filed their motions pursuant to Federal Rule of Civil Procedure 12(b)(6), Chief Shaw seeks dismissal because the allegations against him are duplicative of those asserted against the City of Shreveport. Upon consideration of the parties' filings, the Court hereby **GRANTS** the Defendants' Motions To Dismiss [Record Documents 8, 12, and 14] and

---

[1] The Plaintiff has sued all of the Defendants in their official capacities, alleging that they are each the "chief executive officer and policy maker" of their respective municipal entities. Record Document 1, p. 2. None of these entities is named as a Defendant, but the Court must analyze the Plaintiff's allegations as though made against these municipal entities, since suits against governmental officials in their official capacities are equivalent to suits against the entities they represent when that entity has received notice and the opportunity to respond. <u>See</u> <u>Turner v. Houma Mun. Fire & Police Civil Serv. Bd.</u>, 229 F.3d 478, 483 (5th Cir. 2000) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)). Accordingly, in examining the instant Motions To Dismiss, the Court will conduct an analysis of municipal liability under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978).

**DISMISSES** the Plaintiff's federal and state claims against Chief Shaw, City Marshal Caldwell, and Sheriff Prator.

**I.      Background**

On the night of Friday, May 10, 2013, the Plaintiff alleges that she was unlawfully arrested and detained overnight at Caddo Correctional Center in Shreveport, Louisiana, by deputies with the Caddo Parish Sheriff's Office ("Sheriff's Office") after visiting an inmate at the center. Record Document 1, pp. 2-3. Deputies stated that she had an outstanding warrant dating back to 2008, despite her protestations to the contrary. Id. at p. 4. The following night deputies transferred the Plaintiff to Shreveport City Jail and the custody of the Shreveport Police Department, after explaining the warrant at issue originated from Shreveport City Court. Id. at pp. 5-6. Once there, she was eventually booked with "contempt of court," was released on bond the next morning, Sunday, May 12, 2013, and was provided with a summons to appear in Shreveport City Court. Id.

The Plaintiff retained counsel and then arrived on the scheduled morning to discover that she was not on the court's docket. Id. Eventually, after questions went unanswered from both the Clerk of Court and the Office of the City Marshal ("City Marshal"), minutes from a civil case filed in 2006 were located that indicated a warrant had been issued for the Plaintiff's failure to appear at a judgment debtor exam. Id. at pp. 6-7. However, this warrant had been recalled before her arrest on May 10, 2013. Id.

Thus, given what she believes was an unreasonable arrest and detention by both the Sheriff's Office and the Shreveport Police Department due to an improperly recalled warrant from Shreveport City Court, the Plaintiff now seeks federal and state relief from

five Defendants, each in his official capacity: Chief Shaw; City Marshal Caldwell; Sheriff

Prator; Robert Shemwell, Clerk of Court for the Shreveport City Court; and Cedric

Glover, Mayor of the City of Shreveport. Id. at pp. 1-2, 10. In addition to generally

asserting that the Defendants were each grossly negligent in ensuring the integrity of

their databases pertaining to the issuance, disposition, and/or recall of arrest warrants,

she alleges two specific claims. Id. at 8. First, she claims her arrest and detention were

caused by the "implementation of a custom, policy or official act of defendants or by the

negligence or omissions of [their] personnel." Id. at 10. Second, she also alleges these

Defendants failed to train and monitor their personnel on the performance and operation

of their warrant systems, which contributed, in part, to her improper detention. Id. at p.

8. With these allegations, Chief Shaw, City Marshal Caldwell, and Sheriff Prator each

submitted his respective Motion To Dismiss. Record Documents 8, 12, and 14.

## II.    Chief Shaw's Motion To Dismiss

To begin, the Court must address Chief Shaw's Motion To Dismiss. Chief Shaw

argues, and the Plaintiff agrees, that when a suit is filed against both a police chief in his

or her official capacity and the municipality itself, the suit against the police chief should

be dismissed as redundant. See Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th

Cir. 2003) (citing Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 483

(5th Cir. 2000)). It is undisputed that the Plaintiff's allegations against Chief Shaw in his

official capacity are duplicative of those made against the City of Shreveport, through

the Plaintiff's suit against Mayor Cedric Glover in his official capacity.[2] Therefore, the

Court hereby **GRANTS** Chief Shaw's motion [Record Document 8] and **DISMISSES** the

Plaintiff's suit against him.

### III.    Law and Analysis of the Motions To Dismiss Filed by City Marshal Caldwell and Sheriff Prator

#### A.    Federal Rule of Civil Procedure 12(b)(6)

A defendant may assert through Rule 12(b)(6) that a plaintiff's complaint must be

dismissed because it fails to state a claim upon which relief may be granted. Fed. R.

Civ. P. 12(b)(6). To survive such a challenge, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). Courts are required to accept the plaintiff's "well-pleaded" facts

as true and construe the complaint in a light favorable to that plaintiff. In re Great Lakes

Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted). Nonetheless,

courts are not required to accept the veracity of legal conclusions framed as factual

allegations. Iqbal, 556 U.S. at 678 (reasoning that under Rule 8, it is not sufficient to

merely recite a cause of action's elements with supporting conclusory statements).

Overall, determining when a complaint states a plausible claim is a context-specific

---

[2] While Chief Shaw's Motion To Dismiss was pending, Ollie Tyler was elected Mayor of Shreveport. Nonetheless, this has no impact on the present motion. Federal Rule of Civil Procedure 25(d) explains "an action does not abate when a public officer who is a party . . . ceases to hold office while an action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Any later "proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded." Id. Because the Plaintiff's suit is in all respects a suit against the City of Shreveport, through its mayor in his or her official capacity, the Plaintiff's rights will not be adversely affected by the substitution of Ollie Tyler, in her official capacity, for Cedric Glover. The Court will order the substitution of these parties in an order that is contemporaneous with this ruling.

task, requiring courts to rely on judicial experience and common sense to assess when a complaint crosses the line from conceivable to plausible. Id. at 678-80.[3]

### B.    Municipal[4] Liability Under 42 U.S.C. § 1983

The Complaint, at its core, alleges that the Plaintiff's Fourth Amendment rights were violated when she was arrested and detained, and as a result, the Plaintiff seeks relief under 42 U.S.C. § 1983 from the municipal entities that these Defendants represent. Establishing a § 1983 claim requires two basic elements: (1) a plaintiff was deprived of a constitutional right or a right secured by the laws of the United States, and (2) this deprivation was caused by a state agent acting under the color of law. West v. Atkins, 487 U.S. 42, 48 (1988).

At the outset, however, there are two limitations to pleading a § 1983 claim that the Court must address. First, while it is well-settled law that municipal entities, like the City Marshal or the Sheriff's Office, cannot be subject to liability under § 1983 based on respondeat superior, they may be sued based on constitutional harms that they caused with their policies and/or customs or their failure to properly train or monitor their personnel. Second, a plaintiff must establish an underlying constitutional violation to successfully plead a § 1983 claim. The Court assumes, arguendo, that for purposes of

---

[3] A claim is facially plausible when a plaintiff pleads factual content that permits the court to reasonably infer a defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678-79. This plausibility standard is not a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

[4] The Court notes that the term "municipality," within this context, would include a parish. See Hampton Co. Nat'l Sur. v. Tunica Cnty, Miss., 543 F.3d 221, 224 (5th Cir. 2008) ("A 'municipality,' which in this jurisprudence includes other local governmental units such as a county, is a 'person.'").

these Motions To Dismiss, the Plaintiff's arrest and detention represent the required violation, as the warrant in question from Shreveport City Court purportedly remained active when it should have been properly recalled. Although the Court agrees with Sheriff Prator that there is no affirmative obligation for law enforcement officers to investigate the validity of a warrant before executing it, as well as the fact that officers may rely on a warrant database entry to establish probable cause to make an arrest, see Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 279-80 & n.12 (5th Cir. 1992), such reliance on a warrant's accuracy does not negate a possible Fourth Amendment violation. An individual may be unconstitutionally arrested and detained if an officer's reliance on a warrant's validity is ultimately misplaced due to a bookkeeping error or negligence. See Herring v. United States, 555 U.S. 135, 137 (2009) ("What if an officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee? The parties here agree that the ensuing arrest is still a violation of the Fourth Amendment.").

### i.  The Plaintiff's Claims Concerning the Policies or Customs of City Marshal Caldwell and Sheriff Prator

The Plaintiff alleges that the policies or customs of City Marshal Caldwell and Sheriff Prator were responsible for the constitutional violation she suffered when she was unlawfully arrested and detained. A municipality may be held liable under § 1983 for its official policies or customs that result in a constitutional deprivation, "even if such custom has not received formal approval." See Zarnow v. City of Witchita Falls, Tex., 614 F.3d 161, 166-67 (5th Cir. 2010) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). In this context, "municipal liability . . . requires proof of three

elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001) (citing Monell, 436 U.S. at 694).

In particular, an "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations" or by a custom that is such a persistent and widespread practice of city officials that, although not officially promulgated, it fairly represents a municipal policy. Id. (citing Webster v. City of Hous., 735 F.2d 838, 841 (5th Cir. 1984)). To establish the "moving force" requirement, a plaintiff must show that the municipality's policy or custom that caused the alleged harm was either unconstitutional or "promulgated with deliberate indifference." Id. (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 405 (1997)). Deliberate indifference is a stringent standard: it requires "proof that a municipal actor disregarded [the] known or obvious consequence" that constitutional violations would result and usually demands notice of a "patten of similar constitutional violations." Porter v. Epps, 659 F.3d 440, 446-47 (5th Cir. 2011) (citing Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)).

### a.    The Policies or Customs of City Marshal Caldwell

City Marshal Caldwell argues that the Plaintiff has made insufficient allegations to support her federal claims or link his office to the incident in question, specifically failing to allege that his office's policies or customs were the moving force behind her arrest and detention. The only allegations that pertain to his office, he claims, relate to either the maintenance of the office's warrant database or the office's inability to answer questions concerning the Plaintiff's arrest when she appeared for her summons.

Furthermore, he argues that the Plaintiff's allegations do not assert the officials at
Caddo Correctional Center or the Shreveport City Jail had access to his office's data,
and nothing the Plaintiff alleges connects his office or data to the incident in question.

In response, the Plaintiff contends that her allegations are sufficient to survive a
motion to dismiss and that any challenge to her claims should be addressed at a later
stage of litigation. The Plaintiff reasons it is impossible to know what deficient policy or
custom by City Marshal Caldwell contributed to her arrest and detention, but she retorts
that it is logical to conclude that "somewhere in the chain between an order from a City
Court judge to the City Marshal and then to City and Parish law enforcement agencies,
there was a breakdown." Record Document 17, p. 3. As the City Marshal is the
municipal entity that enforces arrest warrants issued by the Shreveport City Court, the
Plaintiff argues she should be allowed to determine what policy or custom of City
Marshal Caldwell possibly contributed to her arrest and detention with further discovery.

Because the Plaintiff only asserts generic and conclusory allegations concerning
City Marshal Caldwell's policies or customs, the Court finds that she has failed to state a
claim on this ground. The Plaintiff is required to identify the policy or custom at issue,
and she cannot simply infer that a policy existed because a harm resulted from her
interaction with City Marshal Caldwell's office–let alone a policy that "was the cause in
fact or moving force behind [her] constitutional violation." See McClure v. Biesenbach,
355 F. App'x 800, 803-04 (5th Cir. 2009) (citing Spiller v. City of Tex. City, Police Dep't,
130 F.3d 162, 167 (5th Cir. 1997)). Here, the Complaint fails to articulate any deficient
policy or custom and only alleges that "the violations of her constitutional rights were
caused in part by the implementation of a custom, policy, or official act of [City Marshal

Caldwell]." Record Document 1, p. 10 (emphasis added). It is insufficient for a plaintiff, however, to merely add the words "policies . . . and/or customs" to his or her allegations, as the Plaintiff has done. See Whitley v. Hanna, 726 F.3d 631, 649 (5th Cir. 2013) (citing Spiller, 130 F.3d at 167).

Moreover, the description of the relationship between the alleged policy or custom and the harm the Plaintiff suffered "cannot be conclusory; it must contain specific facts." Kitchen v. Webre, No. 13-6705, 2014 WL 2566065, at *3 (E.D. La. May 14, 2014) (quoting Spiller,130 F.3d at 167). Yet, the Plaintiff concedes that "it is impossible for [her] to point to the specific flaw or flaws in the Marshal's standard operating procedure that resulted in [her] arrest and incarceration." Record Document 17, p. 3. Except for concluding that this was "not an isolated incident," the pleadings lack any specific factual allegation to point to a pattern of similar violations or a custom or policy that resulted in her arrest. Record Document 17-1, p. 6. The Plaintiff's allegations, at best, represent a formalistic recital of the necessary elements for municipal liability, but she has only done so by couching legal conclusions as factual allegations without ever articulating the actual policy or custom that led to her detainment. See Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting Twombly, 550 U.S. at 557)). Accordingly, the Court must **DISMISS** the Plaintiff's claim alleging that City Marshal Caldwell's policies or customs contributed to her arrest and detention, as the Plaintiff fails to state a claim under Rule 12(b)(6).

### b.   The Policies or Customs of Sheriff Prator

Sheriff Prator similarly asserts that the Plaintiff has failed to state a claim against his office, as she does not allege that his office was notified the warrant was recalled or that his office was responsible for removing that warrant from any database. More specifically, Sheriff Prator claims that the Plaintiff makes only conclusory allegations and inappropriately asserts that his deputies are obliged to independently investigate the validity of an outstanding warrant before executing it. He reasons the Plaintiff should not be able to claim his office contributed to a constitutional violation of her rights unless this Court finds that an obligation exists to investigate a warrant's validity.

The Plaintiff responds that there is, in fact, an obligation to inquire as to the validity of a warrant before effectuating an arrest and that it may be gross negligence for law enforcement to fail to do so.[5] More importantly, the Complaint identifies what the Plaintiff believes is the specific policy responsible for her unlawful arrest and detention:

> Caddo Parish Sheriff Steve Prator has put in place a policy that for years has enhanced the already outrageous affront of citizen's rights created by negligent or poorly trained bureaucrats by ordering that all deputies who learn of an outstanding arrest warrant against an individual immediately execute a full arrest and incarceration of that individual without making any inquiries as to the details of that warrant.

Record Document 1, p. 9. The Plaintiff reasons that this policy has been in effect since at least July 18, 2009, when deputies testified in an unrelated case that the Sheriff's Office had a policy of arresting individuals without further inquiry once a dispatcher informed a deputy that a person had an outstanding warrant. See State v. Brock,

---

[5] The Plaintiff supports this claim by referencing Herring v. United States, 555 U.S. 135 (2009), as well as two state appellate cases from Texas and Illinois. See Russell v. State, No. 05-13-00889-cr, 2014 WL 2433678 (Tex. Crim. App. May 28, 2014); People v. Morgan, 901 N.E.2d 1049 (Ill. App. Ct. 2009).

47,005, p. 3 (La. App. 2 Cir. 3/7/12); 91 So. 3d 1003, 1005. While Sheriff Prator does

not confirm the existence of such a policy or custom, he explains that even if it did exist,

it would be reasonable under current Fourth Amendment jurisprudence. Moreover,

given what she perceives is a clear policy, the Plaintiff concludes that "it is unnecessary

to list recurring constitutional violations–although plaintiff is confident that during

discovery large numbers of invalid warrants will be found in the current data bases."

Record Document 18, p. 5. It is on this basis that the Plaintiff's Response implies that

Sheriff Prator may be culpable based on the theory of single-incident liability.[6]

Even if the Court presumes the Plaintiff has articulated a policy that may have

contributed to her arrest and detention, her allegations, without more, fail to state a

claim for municipal liability under § 1983. Without addressing the first two requirements

for liability–the existence of a policymaker and an official policy–the Court will focus on

the third requirement: whether the Plaintiff sufficiently alleges that Sheriff Prator's policy

was the moving force behind her arrest and detention. Establishing this policy was the

moving force requires the Plaintiff to express in a non-conclusory manner factual

support that the alleged policy is either unconstitutional or was promulgated with

deliberate indifference. Piotrowski, 237 F.3d at 578; see Prince v. Curry, 423 F. App'x

447, 450-51 (5th Cir. 2011).

At the start, the Court agrees with Sheriff Prator that even if his office had a

---

[6] This theory, which was hypothesized in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), may permit municipal liability without demonstrating a pattern of similar violations to establish deliberate indifference. In a narrow range of circumstances where the resulting constitutional violations are patently obvious and a highly predictable consequence of a policy or custom, a municipality may be subject to § 1983 liability without establishing a preexisting pattern of violations. See Connick, 131 S. Ct. at 1361-64; Kitchen v. Dallas Cnty., Tex., 759 F.3d 468, 484 (5th Cir. 2014).

policy as the Plaintiff asserts, such a policy would be reasonable and constitutionally permissible. See Duckett, 950 F.2d at 279-80 & n.12. It is not unconstitutional for law enforcement officers to arrest and detain an individual based on an outstanding warrant without investigating that warrant's validity. Id. The cases cited by the Plaintiff to assert that there is an obligation to establish a warrant's validity before making an arrest are distinguishable. See Record Document 18, pp. 2-5. These cases primarily concern the application of the good faith exception to the exclusionary rule and stem from unlawful arrests based on an officer's misplaced reliance on his or her personal recollection that a warrant was still active when, in fact, it had been recalled. Thus, because there is no clear jurisprudence to the contrary, the Plaintiff cannot establish that Sheriff Prator's alleged policy is facially unconstitutional.

Instead, to establish that Sheriff Prator's purported policy was the moving force behind her arrest and detention, the Plaintiff must sufficiently allege that Sheriff Prator was deliberately indifferent to the impermissible outcomes of this policy. See Piotrowski, 237 F.3d at 578. This demands factual support or a pattern of similar violations to plausibly claim that Sheriff Prator is ignoring the known or obvious unlawful arrests and detentions that result from relying on warrants that should have been recalled. Rather, the Plaintiff only offers conclusory accusations that this practice existed, and the Complaint fails to provide the necessary facts for this Court to infer a practice that is so well-established and persistent that it constitutes a custom that fairly represents a municipal policy of arresting individuals based on invalid warrants. See Ducksworth v. Rook, No. 2:14-cv-146, 2015 WL 737574, at *2 (S.D. Miss. Feb. 20, 2015). Merely

stating, as the Plaintiff does, that the "facts reflect a [Sheriff's Office] and policy maker which view with deliberate indifference the likelihood that many unconstitutional arrests are likely due to this policy" is not enough. Record Document 18, p. 6; see Huff v. Refugio Cnty. Sheriff's Dep't, No. 6:13-cv-00032, 2013 WL 5574901, at *5 (S.D. Tex. Oct. 9, 2013) (explaining such a "dearth of prior, similar incidents almost invariably results in dismissal").

Even assuming the case referenced by the Plaintiff, State v. Brock, represents additional proof of the prior impermissible consequences of this policy, this single example is not enough to plausibly assert a claim for municipal liability under § 1983. As the Fifth Circuit reasoned, "[t]he existence of only one or, at most, two other similarly situated [individuals] does not plausibly suggest that [a municipality] has a policy or custom of unconstitutional [action] that is 'so persistent and widespread as to practically have the force of law.'" Prince, 423 F. App'x at 451 (quoting Connick, 131 S. Ct. at 1359); see also Huff, 2013 WL 5574901, at *5 (citing cases). Without more than a reference to the Brock case, the Plaintiff's conclusion that discovery will reveal similar violations is insufficient to plausibly assert Sheriff Prator's deliberate indifference.

Lastly, it can hardly be said that the factual allegations here support a plausible claim of single-incident liability against Sheriff Prator. The Court agrees with Sheriff Prator that finding liability based on this theory would require the Court to disregard established precedent that allows law enforcement to rely on the validity of a warrant to arrest and detain an individual, even when there is the possibility that the warrant is invalid. See Duckett, 950 F.2d at 279-80 & n.12. Here, the likelihood that the Plaintiff would have been unlawfully arrested and detained was not so highly predictable that

municipal liability could attach without an established pattern of similar violations, as single-incident liability demands. See Connick, 131 S. Ct. at 1361-64. Thus, because the Complaint fails to sufficiently state a claim, the Court **DISMISSES** the Plaintiff's claim that Sheriff Prator's policies or customs caused the alleged harm she suffered.

### ii. The Plaintiff's Claims Concerning City Marshal Caldwell's and Sheriff Prator's Failure To Train and Monitor Their Personnel

The Plaintiff's second basis for liability under § 1983 is premised on the alleged failure of City Marshal Caldwell and Sheriff Prator to properly train and monitor their personnel, which she claims ultimately contributed to her unlawful arrest and detention. To establish a failure-to-train claim giving rise to municipal liability under § 1983, a plaintiff must demonstrate "(1) inadequate training procedures; (2) that inadequate training caused the [violation of the plaintiff's constitutional rights]; and (3) the deliberate indifference of municipal policymakers." Pineda v. City of Hous., 291 F.3d 325, 331-32 (5th Cir. 2002); see Connick, 131 S. Ct. at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). Deliberate indifference with a failure-to-train claim requires:

> actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

Porter, 659 F.3d at 447 (quoting Connick, 131 S. Ct. at 1360) (internal quotation marks omitted).

### a.       The Alleged Failure To Train by City Marshal Caldwell

City Marshal Caldwell argues that the Plaintiff has failed to assert any specific or individual act sufficient to state a claim for municipal liability under § 1983 for a failure to train or monitor his personnel on the operation of the warrant databases. Beyond failing to allege any improper action by his office that caused the Plaintiff's harm, City Marshal Caldwell reasons this claim must be dismissed because the Plaintiff "has not alleged deliberate indifference and has not alleged a course of consciously chosen action" that gives rise to a constitutional violation. Record Document 12-1, pp. 3-4. Without such allegations, City Marshal Caldwell explains that this claim must be dismissed.

The Plaintiff relies on the Complaint, which alleges City Marshal Caldwell failed to both train and monitor his personnel on the systems for administering warrants. She concludes that the facts of this case "and numerous others will show" the City Marshal's database was "insufficiently monitored and often out of date." Record Document 1, p. 8. The Plaintiff again reasons that it is impossible to make more specific factual allegations until limited discovery has taken place, and any questions of whether a warrant has been properly tracked and recalled could more appropriately be addressed during a later stage of litigation.

As with the previous claim against City Marshal Caldwell, the Complaint lacks factual allegations and support to overcome this challenge to its sufficiency. The Court agrees with City Marshal Caldwell that the allegations are not just conclusory, but that they fail to even assert that he has been deliberately indifferent. Instead, the Plaintiff's accusations, at best, appear only to establish that her arrest and detention were the result of an isolated mistake in the process of recalling a warrant from Shreveport City

Court, and it is unclear whether the mistake was committed by any personnel within the City Marshal's Office. See City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989) ("And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding [a municipality] liable.").

Furthermore, while the allegations mention each of the required elements for municipal liability, they do so "without providing any factual allegations of prior [unlawful arrests and detentions] that would give [City Marshal Caldwell] a reason to think [his] training was deficient." See Huff, 2013 WL 5574901, at *6. The Plaintiff asks the Court to extrapolate from her incident that City Marshal Caldwell was deliberately indifferent, because it would be logical to presume that her arrest and detention would not have taken place but for his inadequate training or monitoring. Even assuming the other elements for liability are sufficiently pled, alleging deliberate indifference requires more than the conclusory assertion that other examples of injuries must exist as a result of City Marshal Caldwell's deficient training or monitoring.

The Plaintiff does not put forward any allegations supporting deliberate indifference or a pattern of failing to train personnel through the existence of even "one or two prior incidents," an amount the Fifth Circuit has held fails to meet the stringent standard of fault necessary to state a plausible claim for relief against a municipality. See Prince, 423 F. App'x at 451-52. This failure to allege any pattern of similar violations sufficient to put City Marshal Caldwell on notice that his training was deficient and resulted in unlawful arrests and detentions is a fatal flaw, even at this early stage of litigation. See id.; Herrington v. Gautreaux, No. 13-650, 2014 WL 811584, at *4 (M.D.

16 of 27

La. Feb. 28, 2014); <u>Huff</u>, 2013 WL 5574901, at *6; <u>Frahm v. Refugio Cnty., Tex</u>, No. V-11-56, 2012 WL 1805329, at *5-6 (S.D. Tex. May 16, 2012). Likewise, it is hardly enough to sufficiently plead deliberate indifference by simply implying that the Plaintiff's injury could have been avoided through better training and that numerous other cases will be revealed during discovery. <u>See</u> <u>Canton</u>, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury."). As a result, pursuant to Rule 12(b)(6), the Court must **DISMISS** the Plaintiff's failure-to-train claim against City Marshal Caldwell.

### b.    The Alleged Failure To Train by Sheriff Prator

Sheriff Prator asserts two brief arguments for why the Plaintiff's claim concerning his failure to train or monitor his personnel must be dismissed. First, he explains that the Complaint fails to make any non-conclusory allegations that, when accepted as true, support a claim that the Plaintiff has suffered a constitutional violation as a result of inadequate training. While he concedes that the Plaintiff's allegations concerning a failure to train or monitor personnel on the warrant system may arguably relate to his office, Sheriff Prator states these claims are conclusory and relate generically to all the named Defendants. Second, Sheriff Prator again reasons that because it is well-settled law that law enforcement officers can arrest and detain an individual based on probable cause established through reliance on a computer database, the Plaintiff's accusations fail to state a claim of a constitutional harm that can impose liability. There is no

obligation that his deputies confirm the validity of a warrant before an arrest, Sheriff Prator argues, and "to find municipal liability under this theory would require the Court to essentially overturn Fifth Circuit clearly established law." Record Document 21, p. 3.

The Plaintiff's Response suggests that Sheriff Prator's interpretation of the law is misplaced and that his deputies "should be trained to investigate [a] warrant's validity before they execute it." Record Document 18, p. 7. Relying on the Brock case, the Plaintiff claims that no such training exists for the deputies and that this deficiency reflects a deliberate indifference to the likely unconstitutional arrests and detentions that result from this lack of training. She also reiterates her argument that these predictable constitutional harms fall within the narrow range of circumstances that might permit liability without a preexisting pattern of similar violations.

As with the claims above, the Plaintiff's conclusory and unsupported allegations fail to state a claim upon which relief may be granted. Although her pleadings explain that Sheriff Prator's failure to train his deputies to investigate the validity of warrants is the basis for her § 1983 claim, this accusation, alone, is not enough. To establish liability, she must assert (1) that Sheriff Prator's training procedures were inadequate, (2) that this inadequate training contributed to her arrest and detention, and (3) that Sheriff Prator, as the municipal policymaker, was deliberately indifferent to the rights of persons, like the Plaintiff, with whom the deputies interacted and possibly subjected to constitutional harms. Pineda, 291 F.3d at 331-32; see Connick, 131 S. Ct. at 1359-60. Given it is well-settled law that the deputies may rely on information from others concerning an outstanding warrant when executing an arrest, see Duckett, 950 F.2d at 279-80 & n.12, establishing deliberate indifference here requires Sheriff Prator to have

had actual or constructive notice that his failure to train or monitor his deputies was

causing a constitutional harm, which usually demands an awareness of a pattern of

similar violations. See Porter, 659 F.3d at 447.

Nevertheless, even assuming the other requirements for municipal liability are

sufficiently pled, the Plaintiff's allegations only offer conclusory assertions that Sheriff

Prator's deliberate indifference caused her arrest and detention. The Plaintiff's claim

that Sheriff Prator failed to properly train or monitor his deputies' use of the office's

warrant systems, which she claims are often out of date, is conclusory, and the rest of

her pleadings provide no direct allegation that he was on notice that any deficient

training had resulted in unlawful arrests and detentions. See Huff, 2013 WL 5574901, at

*6. At best, she implies that it is conceivable that similar violations have taken place as

a result of this allegedly deficient training. Yet, the allegations lack factual specificity to

support a plausible claim that similar violations exist or that Sheriff Prator was put on

notice of them. Id.; see Iqbal, 556 U.S. at 678 (explaining the plausibility standard is not

a probability standard, "but it asks for more than a sheer possibility that a defendant has

acted unlawfully"). The Court cannot accept the veracity of these conclusory allegations.

Furthermore, even accepting the Plaintiff's reference to the Brock case as factual

support, such minimal evidence does not entitle an otherwise deficient claim of

municipal liability to survive a motion to dismiss. Prince, 423 F. App'x at 451 ("[T]he

existence of one or two prior incidents [does not] indicate that [a municipality] was

deliberately indifferent . . . or had a pattern of failing to train personnel."); Herrington,

2014 WL 811584, at *4. Brock does not appear to place Sheriff Prator on notice of a

pattern of similar constitutional harms, and deliberate indifference in this context is a

stringent requirement, demanding more than legal conclusions framed as factual accusations.[7] Although the Court is sympathetic to the Plaintiff's experience, alleging municipal liability for a failure to properly train personnel requires more than the mere accusation that a deputy could have done more to avoid the harm the Plaintiff suffered. See Connick, 131 S. Ct. at 1363-64. Consequently, under Rule 12(b)(6), the Court must **DISMISS** the Plaintiff's failure-to-train claim against Sheriff Prator.

### C.     The Plaintiff's Louisiana State-Law Claims Against City Marshal Caldwell and Sheriff Prator

In addition to her § 1983 claims, the Plaintiff asserts that state causes of action exist against City Marshal Caldwell and Sheriff Prator. However, the Complaint only alleges that the "above stated acts, conduct, acquiescence and omissions of the named defendants also constitute a violation of the Constitution and Statutory laws of the State of Louisiana, including but not limited to Article 2315 of the Louisiana Civil Code" ("Article 2315"), and the Plaintiff requests this Court to address these as part of this proceeding. Record Document 1, p. 10. This broad set of accusations, including a reference to Article 1, § 5 of the Louisiana Constitution, encapsulates the entirety of the Plaintiff's allegations under Louisiana law. Other than mentioning Article 2315, the Complaint lacks reference to any statutory law or jurisprudence that provides for relief, apparently hoping that the Court could use the "acts, conduct, acquiescence and omissions" mentioned in the Complaint to construct other possible avenues of relief for

---

[7] The Court must also note that it is equally unpersuaded that the Plaintiff has sufficiently alleged a claim against Sheriff Prator based on the theory of single-incident liability. See Connick, 131 S. Ct. at 1361-64; Kitchen, 759 F.3d at 484. It agrees with Sheriff Prator that the Plaintiff has failed to point to any "facts to support a patently obvious risk of recurring violations," especially when the law allows deputies to arrest individuals in the manner in which the Plaintiff was allegedly arrested and detained.

the Plaintiff.[8] Artfully pleading a cause of action is the Plaintiff's responsibility, and courts are not required to "conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." Rios v. City of Del Rio, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation marks and citation omitted). Thus, in applying the Rule 12(b)(6) standard to the Plaintiff's discernable state allegations against City Marshal Caldwell and Sheriff Prator, the Court must dismiss these actions, as the Plaintiff has failed to state claims upon which relief may be granted.[9]

### i.   The Plaintiff's State-Law Claims Against City Marshal Caldwell

As referenced by the Plaintiff, Article 2315 provides for a general negligence action and requires proof of five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of

---

[8] The Court must note that with the exception of a brief argument from City Marshal Caldwell in his Motion To Dismiss, the parties have failed to directly address or brief any state causes of action. Record Document 12-1, p.4. At most, the Plaintiff's pleadings imply that her claims of negligence, failure to train and monitor, and impermissible policies or customs of the Defendants also represent state claims.

[9] Generally courts should decline exercising supplemental jurisdiction over pendent state-law claims once the federal claims have been dismissed against a party, but this is not mandatory. See Smith v. Amedisys Inc., 298 F.3d 434, 446-47 (5th Cir. 2002). Although neither discovery nor extensive briefing have taken place, the remaining state-law claims lack novelty or complexity. Here, the question for the Court is procedural, concerning the sufficiency of the Plaintiff's pleadings. See 28 U.S.C. § 1367(c); Smith, 298 F.3d at 446-47. More importantly, the Court believes that the factors of "judicial economy, convenience, fairness, and comity" weigh in favor of retaining jurisdiction, given that there are other named Defendants remaining in this case against whom the Plaintiff has made the same state-law allegations. See Smith, 298 F.3d at 446 (quoting Batiste v. Island Records, Inc., 179 F.3d 217, 227 (1999)). The Court finds the factors of judicial economy, convenience, and fairness weigh heavily in favor of retaining jurisdiction because certain state-law allegations are common amongst all the named Defendants, even those who did not file motions to dismiss. Requiring a state court to address any remaining state claims against City Marshal Caldwell and Sheriff Prator would result in parallel litigation in state court arising out of the same operative facts as those present in this Court, which would only mean a duplication of efforts for the Plaintiff and the state court system.

protection element); and (5) the actual damages (the damages element). Thibodeaux v. Trahan, 2011-0328, p. 2 (La. App. 3 Cir. 10/5/11); 74 So. 3d 850, 853 (quoting LA PAC Mfg., Inc. v. TCM Mfg., Inc., 2006-0748, p. 6 (La. App. 3 Cir. 12/6/06); 944 So. 2d 831, 835-36). City Marshal Caldwell explains that given this negligence standard, without some factual allegation of an act "which breaches some specific duty to the plaintiff [that] actually causes some damage to plaintiff," the claim cannot survive. Record Document 12-1, p.4. Moreover, he argues that "the absence of allegations of facts sufficient to violate plaintiff's rights for false arrest under the United States Constitution reflects the absence of a basis for a violation under the Louisiana Constitution." Id. Taken together, City Marshal Caldwell asserts that the Plaintiff has failed to sufficiently express a plausible state-law claim against his office.

The Plaintiff's Response rests on the proposition that the Complaint outlines sufficient allegations to survive a motion to dismiss. After repeating the allegations of negligence she made in the Complaint, the Plaintiff seeks to bolster her claims by explaining that City Marshal Caldwell is the executive officer who oversees the execution of the orders and warrants of the Shreveport City Court. The thrust of her argument against dismissal, nevertheless, is based on the implication that there must have been a "breakdown" in the recall of her warrant involving the City Marshal. She concedes the basis for the City Marshal's negligence is unknown, but she argues she should be entitled to discovery: "At this stage of the proceeding it is impossible for plaintiff to point to the specific flaw or flaws in the [City] Marshal's standard operating procedures that resulted in plaintiff's arrest and incarceration, but with the first level of discovery, that should become apparent." Record Document 17, p. 3.

Here, the Court finds that any cognizable state-law claim against City Marshal Caldwell must be dismissed because of the Plaintiff's failure to state a claim under Rule 12(b)(6). While viewing the Plaintiff's allegations in a favorable light, the Court is not required to accept the veracity of conclusory allegations or permit claims to proceed when they only present a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678-79. Her claims are merely legal conclusions framed as factual allegations, presuming City Marshal Caldwell's negligence because the Plaintiff was arrested and detained based on a warrant that she claims emanated from Shreveport City Court. This assumption is not enough; it lacks factual allegations articulating the duty City Marshal Caldwell owed to the Plaintiff and, more importantly, how that duty was breached. Her allegations do not allege how City Marshal Caldwell caused her arrest and detention either; instead, she asks the Court to presume that City Marshal Caldwell contributed, at least in part, to this harm. The implication that there is a deficiency within the "standard operating procedures" of the City Marshal's Office, that the Plaintiff assures the Court will be uncovered during discovery, fails to state a plausible claim. "Gone are the days when a plaintiff could assert 'a wholly conclusory statement of claim' and survive a motion to dismiss simply because his 'pleadings left open the possibility that [he] might later establish some set of undisclosed facts to support recovery.'" Callaway v. Am. Med. Sys., Inc., No. 11-00193, 2011 WL 7724268, *4 (W.D. La. Dec. 8, 2011) (citing Twombly, 550 U.S. at 561–62). As a result, for the reasons outlined above, the Plaintiff's state-law claims against City Marshal Caldwell are **DISMISSED** based on her failure to state a claim under Rule 12(b)(6).

### ii.    The Plaintiff's State-Law Claims Against Sheriff Prator

In addition to more general negligence claims under Article 2315, the Court must presume the Plaintiff seeks relief based on false imprisonment, even though the claim is absent from the Complaint, given that she alleges deputies violated her rights when she was arrested and detained without a valid warrant or probable cause. See Kyle v. City of New Orleans, 353 So. 2d 969, 971 (La. 1977). Nonetheless, Sheriff Prator's motion omits any direct argument concerning the dismissal of the Plaintiff's state-law claims and, instead, generally argues that her claims are conclusory and fail to allege any unconstitutional action by his office. The Plaintiff, similarly, does not directly address her state-law claims in the Response.

Because the Plaintiff's state-law allegations against Sheriff Prator suffer from the same fatal procedural flaws as those analyzed above, these claims must be dismissed. By making generalized negligence claims concerning Sheriff Prator's duty to ensure the integrity of his office's warrant database, as well as monitor and train personnel on this system, the Plaintiff fails to allege what specific actions of Sheriff Prator breached any duty he had to her or how any substandard conduct caused her arrest and detention. Taking the allegations in a light most favorable to the Plaintiff, the Complaint only appears to conclude that there was substandard maintenance or monitoring of the office's warrant system, but it fails to identify what actions of Sheriff Prator were deficient or how those deficiencies contributed to the Plaintiff's arrest and detention. This Court is not required to accept the truth of these legal conclusions framed as factual allegations. Iqbal, 556 U.S. at 678.

The Plaintiff also contends that the deputies should have been trained to

investigate the validity of a warrant before executing it. She believes that this failure to train establishes Sheriff Prator's negligence. Yet, as noted above, it is well-settled law that deputies are not obliged to undertake such an independent analysis of a warrant's validity before execution, and this Court will not find that a negligence claim exists for failing to train deputies as to a non-existent mandate. See Duckett, 950 F.2d at 279-80 & n.12; see also Touchton, 512 So. 2d at 525.

Finally, even if the Court presumes the Plaintiff sought to plead a false imprisonment claim, given the facts, such a cause of action cannot withstand a motion to dismiss. The claim has two elements: "(1) detention of a person, and (2) the unlawfulness of such detention." Reese v. City of Baton Rouge, 644 So. 2d 674, 676 (La. App. 1 Cir. 1994). "Unlawful detention is restraint without color of legal authority. Thus, if an arrest is made either without any legal process or warrant or under a warrant void and null upon its face, a false imprisonment has occurred." Id. (citations omitted). Law enforcement officers cannot be liable for damages for false imprisonment, however, when they detain a person with a warrant or without a warrant pursuant to statutory authority, which can include arrests based on probable cause established from a facially valid warrant that later turns out to be invalid. See, e.g., Deville v. Jefferson Parish Sheriff's Dep't, 1999-1629, pp. 3-4 (La. App. 3 Cir. 5/3/00); 762 So. 2d 641, 642-43; Touchton v. Kroger Co., 512 So. 2d 520, 524-25 (La. App. 3 Cir. 1987).

Any of the Plaintiff's accusations here concerning the unlawfulness of her detention by Sheriff Prator, which the Court construes as an attempt to assert a false imprisonment claim, are equally as conclusory as her other negligence claims. She states that the deputies had "no valid search warrant or probable cause to seize and

arrest" her and that the deputies "could not have had an objective, good faith belief that plaintiff was guilty of any offense nor subject to a valid arrest warrant." Record Document 1, p. 7. Not only are these allegations conclusory, they also appear inconsistent with her admission that a warrant was issued for her failure to appear in Shreveport City Court and her assertion that the deputies were negligent in failing to investigate the validity of that warrant. See Iqbal, 556 U.S. at 678. It is the Plaintiff's burden to establish that her detention was unlawful, and if she seeks to allege that Sheriff Prator is liable for a false arrest made pursuant to a warrant, as her pleadings indicate, she must also articulate how the warrant was facially null and void to support that claim. See Touchton, 512 So. 2d at 525. The Plaintiff, however, makes no such allegation. At best, the Complaint only appears to indirectly mention the necessary elements for a false imprisonment claim, which is clearly insufficient to plead a plausible claim for relief. Iqbal, 556 U.S. at 678-80. Like the rest of her claims, the Plaintiff has pled facts that are "merely consistent with" the liability of Sheriff Prator, but she has stopped short of the line between possible and plausible. Id. (quoting Twombly, 550 U.S. at 557). Accordingly, for the reasons addressed above, the Plaintiff's state-law claims against Sheriff Prator are **DISMISSED**, as she has failed to state a claim upon which relief may be granted.

## IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motions To Dismiss filed by Chief Shaw [Record Document 8], City Marshal Caldwell [Record Document 12], and Sheriff Prator [Record

Document 14] are hereby **GRANTED**.

      **IT IS FURTHER ORDERED** that the Plaintiff's claims against Chief Shaw, City

Marshal Caldwell, and Sheriff Prator are **DISMISSED WITH PREJUDICE**.

      **THUS DONE AND SIGNED** on this _20th_ day of March , 2015.

                    ELIZABETH ERNY FOOTE
                    UNITED STATES DISTRICT JUDGE