## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| **NIDA M. EASTER** | **CIVIL ACTION NO. 14-0967** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **CHARLIE CALDWELL, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### MEMORANDUM RULING

Before this Court is a Motion for Judgment on the Pleadings submitted by Defendant Robert Shemwell ("Shemwell"), Clerk of Shreveport City Court. [Record Document 27]. The Plaintiff, Nida M. Easter ("Easter"), filed this suit against Shemwell, as well as Shreveport Police Chief Willie Shaw, Shreveport City Marshal Charlie Caldwell, Jr., Caddo Sheriff Steve Prator, and former Shreveport Mayor Cedric Glover,[1] alleging that their roles in her purportedly unlawful arrest violated 42 U.S.C. § 1983 and Louisiana tort law. [Record Document 1]. The Court has previously dismissed Easter's claims against City Marshal Caldwell, Sheriff Prator, and Chief Shaw. [Record Document 26]. After consideration of the foregoing, the Court hereby **GRANTS** Shemwell's Motion for Judgment on the Pleadings and **DISMISSES** all of Easter's claims against him.

---

[1] Subsequent to the filing of this lawsuit, the Court substituted the present mayor of Shreveport, Ollie Tyler, for Cedric Glover pursuant to Fed. R. Civ. P. 25(d). [Record Document 25].

## I.    Background

On the night of Friday, May 10, 2013, Easter alleges that she was unlawfully arrested and detained overnight at Caddo Correctional Center in Shreveport, Louisiana, by deputies with the Caddo Parish Sheriff's Office after visiting an inmate at the center. Record Document 1, pp. 2-3.  Deputies stated that she had an outstanding warrant dating back to 2008, despite her protestations to the contrary. Id. at p. 4.  The following night deputies transferred Easter to Shreveport City Jail and the custody of the Shreveport Police Department, after explaining the warrant at issue originated from Shreveport City Court. Id. at pp. 5-6.  Once there, she was eventually booked with "contempt of court," was released on bond the next morning, Sunday, May 12, 2013, and was provided with a summons to appear in Shreveport City Court. Id.

Easter retained counsel and then arrived on the scheduled morning to discover that she was not on the court's docket.  Id.  Eventually, after questions went unanswered from both the Clerk of Court and the Office of the City Marshal, minutes from a civil case filed in 2006 were located that indicated a warrant had been issued for Easter's failure to appear at a judgment debtor exam.  Id. at pp. 6-7.  However, this warrant had been recalled before her arrest on May 10, 2013.  Id.

Based on these events, Easter sought federal and state relief from five Defendants, each in his official capacity: Willie Shaw, Shreveport Chief of Police; Charlie Caldwell, Jr., Shreveport City Marshal; Steve Prator, Caddo Sheriff; Robert Shemwell, Clerk of Court for the Shreveport City Court; and Cedric Glover, Mayor of the City of Shreveport.  Id. at pp. 1-2, 10.  The Complaint, at its core, alleges that Easter's arrest and detention violated her

fourth amendment rights and that the Defendants' roles (in their official capacities) in the arrest make them liable as municipal entities under 42 U.S.C. § 1983.  Easter cast her § 1983 claims in two different forms.  First, she alleges Defendants' failure to properly train and monitor their personnel on the performance and operation of their warrant systems contributed to her improper detention and violated 42 U.S.C. § 1983 (supervisor liability). Id. at p. 8.  Second, she claims that the "implementation of a custom, policy or official act of defendants" caused her arrest and violated 42 U.S.C. § 1983 (liability for customs or policies).  Id. at 10.  The Complaint also asserts that Defendants' conduct violated Louisiana Civil Code Article 2315, Louisiana's general tort provision.[2]  Id. at p. 1, 10.

---

[2] Though the Complaint sought a much broader basis for relief under state law, namely, all applicable "Constitutional and Statutory laws of the State of Louisiana," Record Document 1, p. 10, the Court has decided to limit its analysis to Article 2315 of the Civil Code.  Record Document 26, pp. 20-21.  As the Court previously explained in its Memorandum Ruling on Defendants' Motions to Dismiss:

> The Complaint only alleges that the "above stated acts, conduct, acquiescence and omissions of the named defendants also constitute a violation of the Constitution and Statutory laws of the State of Louisiana, including but not limited to Article 2315 of the Louisiana Civil Code" ("Article 2315"), and Easter requests this Court to address these as part of this proceeding. Record Document 1, p. 10. This broad set of accusations, including a reference to Article 1, § 5 of the Louisiana Constitution, encapsulates the entirety of Easter's allegations under Louisiana law. Other than mentioning Article 2315, the Complaint lacks reference to any statutory law or jurisprudence that provides for relief, apparently hoping that the Court could use the "acts, conduct, acquiescence and omissions" mentioned in the Complaint to construct other possible avenues of relief for Easter. Artfully pleading a cause of action is Easter's responsibility, and courts are not required to "conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." Rios v. City of Del Rio, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation marks and citation omitted).

Record Document 26, pp. 20-21.

The Court dismissed Easter's claims against Chief Shaw, City Marshal Caldwell, and Sheriff Prator.  Record Document 26, p. 1.  The Court dismissed the claims against Chief Shaw because they were redundant of the claims against Mayor Glover given that a suit against a police chief in his or her official capacity is one in the same as a suit against the municipality.  Id. at pp. 3-4.  The Court dismissed the claims against Sheriff Prator and Marshal Caldwell pursuant to Federal Rule of Civil Procedure 12(b)(6).  Regarding Easter's allegations that the policies or customs of Sheriff Prator and Marshal Caldwell violated § 1983, the Court found that they were too generic and conclusory to be entitled to relief: the claims against Marshal Caldwell failed to identify a specific objectionable policy or custom and the claims against both Marshal Caldwell and Sheriff Prator failed to explain how the alleged custom or policy caused Easter's unlawful arrest.  Id. at pp. 7-14. Likewise, the Court found that the allegations that Sheriff Prator's and Marshal Caldwell's failure to properly train and monitor their personnel violated § 1983 were too conclusory to be entitled to relief: they failed to identify the inadequacy of the training or how that inadequacy caused Easter's unlawful arrest.  Id. at pp. 14-20.  Finally, the Court found Easter's claims of tort liability were too conclusory to withstand 12(b)(6) scrutiny.  Id. at pp. 25-26.

Relying on defenses that largely mirror those raised by Marshal Caldwell and Sheriff Prator, Shemwell moves this Court for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).  Record Document 27.  Easter does not contest the arguments raised

in Shemwell's motion.  Record Document 33.[3]

## II.    Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that a party may move for a judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ." FED. R. CIV. P. 12(c).  A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.  Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted).

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).  See Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2008).  To survive such a challenge under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Courts are required to accept the plaintiff's "well-pleaded" facts as true and construe the complaint in a light favorable to that plaintiff.  In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted).  Nonetheless, courts are not required to accept the veracity of legal conclusions framed as factual allegations.  Iqbal, 556 U.S. at 678 (reasoning that under Rule 8, it is not

---

[3] In Easter's Response to Shemwell's Motion for Judgment on the Pleadings, Easter writes that she "understands that the court will grant [Shemwell's] dismissal.  In due time a final judgment should also be entered in favor of defendant Shemwell." Record Document 33, p. 1.

sufficient to merely recite a cause of action's elements with supporting conclusory statements). Overall, determining when a complaint states a plausible claim is a context-specific task, requiring courts to rely on judicial experience and common sense to assess when a complaint crosses the line from conceivable to plausible. Id. at 678-80.[4]

## III.  Discussion

### A.   Supervisory Liability under 42 U.S.C. § 1983

Shemwell first urges the Court to dismiss Easter's claim that Shemwell's failure to properly train and monitor his personnel, which she claims ultimately contributed to her unlawful arrest and detention, violated 42 U.S.C. § 1983. In general, establishing a § 1983 claim requires two basic elements: (1) a plaintiff was deprived of a constitutional right or a right secured by the laws of the United States,[5] and (2) this deprivation was caused by a state agent acting under the color of law. West v. Atkins, 487 U.S. 42, 48 (1988).  To establish a failure-to-train claim against a municipality under § 1983, a plaintiff must also

---

[4] A claim is facially plausible when a plaintiff pleads factual content that permits the court to reasonably infer a defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678-79. This plausibility standard is not a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

[5] For the purposes of this discussion, the Court assumes without deciding that Easter's arrest violated her fourth amendment right against unreasonable seizure. See U.S. Const. amend. IV; Herring v. United States, 55 U.S. 135, 137 (2009) ("What if an officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee? The parties here agree that the ensuing arrest is still a violation of the Fourth Amendment.").

demonstrate "(1) inadequate training procedures; (2) that inadequate training caused the [violation of plaintiff's constitutional rights]; and (3) the deliberate indifference of municipal policymakers." Pineda v. City of Hous., 291 F.3d 325, 331-32 (5th Cir. 2002); see also Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

Shemwell argues that Easter cannot meet the first element of supervisory liability, that is, the existence of an inadequate training procedure, because she has not identified any defects in the Shreveport City Clerk's training policies. To sustain the first element of supervisor liability, "a plaintiff must allege with specificity how a particular training program is defective." Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005). The Complaint alleges that Shemwell "failed to monitor the performance" of his warrant databases and "failed to properly train [his] personnel employed to operate these systems." Record Document 1, p. 8. The Complaint also insists that "[f]acts of this case and numerous others will show the data bases [sic] used by these defendants are insufficiently monitored and often out of date." Id. These allegations are insufficient to withstand 12(c) scrutiny. They do not "allege with specificity" how Shemwell's training procedures are defective. Roberts, 397 F.3d at 293. Indeed, they do little more than restate the first element of failure-to-train liability, a fatal characteristic for any claim facing a dismissal challenge. See Twombly, 550 U.S. at 557.

Even if Easter were to prevail on the first element of failure-to-train liability, Shemwell argues that she cannot meet the second element of supervisory liability, that is, that the defective training caused her unlawful arrest, because her Complaint fails to

provide any explanation of how a deficiency at the City Court Clerk's office caused Easter's arrest.  The alleged deficiency in a municipality's training "must be closely related to the injury." Pineda, 291 F.3d at 332.  Here, Easter has asserted only that  "the violations of her constitutional rights were caused in part by . . . omissions of personnel employed by these defendants."  Record Document 1 at p. 10.  This statement is conclusory and lacks the specificity required to sustain a claim against a 12(c) challenge.  See Twombly, 550 U.S. at 557.

Finally, Shemwell argues that Easter's failure-to-train claim is most tenuous in the face of the third element, that is, a municipality's deliberate indifference to its constitutional violations, because Easter does not allege–with or without specificity–that the City Court Clerk's office has acted with deliberate indifference toward its alleged constitutional violations. To show deliberate indifference, "mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." Roberts, 397 F.3d at 293 (citing  Synder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998)).  Instead, deliberate indifference with a failure-to-train claim requires:

> actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

Porter v. Epps, 659 F.3d 440, 447 (5th Cir. 2011) (quoting Connick, 131 S. Ct. at 1360).

In addition to the aforementioned allegations, Easter's Complaint alleges that Shemwell is "guilty of gross negligence in ensuring the integrity of its data base [sic] pertaining to arrest warrants, their issuance, their disposition and/or their recall."  Record Document 1 at p. 8.  Even assuming, *arguendo*, that Easter's description of "gross negligence" is an attempt to allege deliberate indifference, the statement is conclusory.  Easter does not put forward any specific facts supporting deliberate indifference.  Nor has she provided any facts supporting a pattern of failing to train personnel through the existence of even "one or two prior incidents," an amount the Fifth Circuit has held fails to meet the stringent standard of fault necessary to state a plausible claim for relief against a municipality. See Prince v. Curry, 423 F. App'x 447, 451-52 (5th Cir. 2011).  Thus, Easter's allegations lack the specificity required under 12(c) scrutiny to meet the third element of supervisor liability.

Because Easter cannot demonstrate plausibility of success on any of the three elements for failure-to-train § 1983 liability, see Iqbal, 556 U.S. at 678-80, the Court must **DISMISS** Easter's failure-to-train claim against Shemwell pursuant to Rule 12(c).

B.    Liability for Customs or Policies under 42 U.S.C. § 1983

Shemwell also moves the Court to dismiss Easter's claim that the policies and customs of the Shreveport Clerk's office entitle her to § 1983 relief.  In this context, a successful claim of § 1983 municipal liability requires proof of "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

Shemwell argues that Easter cannot prevail on the second element of an unconstitutional policy claim, that is, the existence of an offending policy, because Easter "fail[s] to identify a policy or custom at issue."[6]  An "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations" or by a custom that is such a persistent and widespread practice of city officials that, although not officially promulgated, it fairly represents a municipal policy.  Id. at 579 (citing Webster v. City of Hous., 735 F.2d 838, 841 (5th Cir. 1984)).  Here, Easter's only allegation of an offending policy or custom by the City Court Clerk's office is that there was a "failure to monitor the performance" of its arrest warrant database.  Record Document 1 at p. 8.  This statement is conclusory and cannot withstand 12(c) scrutiny.

Shemwell also argues that Easter has failed to demonstrate the third element of an unconstitutional policy claim, that is, that the policy was the "moving force" behind the constitutional violation, because she fails to explain how a policy of the City Court Clerk's office caused her arrest.  The third element of this type of § 1983 liability in itself requires two showings: (1) that the challenged policy or custom was either unconstitutional or promulgated with deliberate indifference toward its known or obvious unconstitutional effects and (2) that the challenged policy caused plaintiff's constitutional deprivation. Piotrowski, 237 F.3d at 579-80.  Deliberate indifference is a stringent standard: it requires "proof that a municipal actor disregarded [the] known or obvious consequence" that constitutional violations would result and usually demands notice of a "pattern of similar

---

[6] Record Document 27-1 at pp. 5-6.

constitutional violations." Porter, 659 F.3d at 446-47 (citing Connick, 131 S. Ct. at 1360).

In addition, the plaintiff must describe "a direct causal link between the municipal policy

and the constitutional deprivation," Piotrowski, 237 F.3d at 580, which "cannot be

conclusory; it must contain specific facts," Kitchen v. Webre, No. 13-6705, 2014 WL

2566065, at *3 (E.D. La. May 14, 2014) (quoting Spiller v. City of Tex. City, Police Dep't,

130 F.3d 162, 167 (5th Cir. 1997)).  Easter's Complaint alleges that "the violations of her

constitutional rights were caused in part by the implementation of a custom, policy, or

official act of [Shemwell]."  Record Document 1, p. 10 (emphasis added).

Here, the Complaint fails to articulate any deficient policy or custom and only

provides a conclusory allegation that the policy caused her unconstitutional arrest.  Easter

is required to identify the policy or custom at issue, and she cannot simply infer that a

policy existed because the City Court Clerk's office played a role in issuing her arrest

warrant.  Regarding causation, alleging that her unconstitutional arrest was "caused in part

by the implementation of a custom, policy, or official act" of Shemwell is no more than a

recital of a necessary element for municipal liability couched as a fact.  See Iqbal, 556 U.S.

at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to

relief.'" (quoting Twombly, 550 U.S. at 557)).  Accordingly, the Court must **DISMISS**

Easter's § 1983 claim alleging that Shemwell's policies or customs contributed to her arrest

and detention, as Easter fails to state a claim under Rule 12(c).

C.     State Law Liability

Shemwell urges this Court to decline to exercise supplemental jurisdiction over

Easter's state law claim pursuant to 28 U.S.C. § 1367(c).  The Court has already addressed previous arguments on this question and decided that dismissal of Easter's state law claims under 28 U.S.C. § 1367(c) would be inappropriate.  Record Document 26, p. 21 n. 9.  In essence, the Court found that § 1367(c) dismissal was not warranted because Easter alleged state law claims against Defendants who had not moved for dismissal, meaning that dismissing the state law claims for only those Defendants who had moved for dismissal would create the potential for duplicative litigation in state court.  Id.  The situation facing Shemwell remains the same: Easter still asserts state law claims against a Defendant (Mayor Ollie Tyler) who has not moved for dismissal.  The Court therefore declines to invoke § 1367(c) to dismiss Easter's state law claim.

Shemwell does not ask the Court to dismiss Easter's state law claim on the ground that it is not entitled to relief under 12(c) scrutiny.  A district court, however,  may dismiss an action for failure to state a claim *sua sponte* as long as the plaintiff is given prior notice of the potential dismissal and an opportunity to respond.  See Davoodi v. Austin Indep. Sch. Dist., 755 F.3d 307, 310 (5th Cir. 2014).

Here, Easter has been afforded both procedural safeguards.   Other previous Defendants to this suit have sought dismissal of Easter's state law claims under 12(b)(6). E.g., Record Document 8.  Easter responded to those arguments.  E.g., Record Document 18.  The Court addressed both Defendants' and Easter's arguments, ultimately ruling that Easter's state law claims were not entitled to relief under 12(b)(6).  Those state law claims are indistinguishable from the state law claim against Shemwell save for the name of the defendant.   More important, in her response to the motion before the Court, Easter

declined to address any of the issues raised by Shemwell, writing instead that she "understands that the court will grant [Shemwell's] dismissal.  In due time a final judgment should also be entered in favor of defendant Shemwell."[7]  Record Document 33, p. 1. Collectively, these actions have provided Easter with sufficient notice of the question of whether her state law claim can withstand 12(c) scrutiny to allow the Court to address the question on its own initiative.

The issue, then, becomes whether Easter has stated a plausible claim for relief under Article 2315 of the Louisiana Civil Code.  Article 2315 provides for a general negligence action and requires Easter prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of [Easter's] injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of [Easter's] injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

Thibodeaux v. Trahan, 2011-0328, p. 2 (La. App. 3 Cir. 10/5/11); 74 So. 3d 850, 853 (quoting LA PAC Mfg., Inc. v. TCM Mfg., Inc., 2006-0748, p. 6 (La. App. 3 Cir. 12/6/06); 944 So. 2d 831, 835-36).  The Complaint alleges only that its description of "acts, conduct, acquiescence and omissions" by Shemwell that violate § 1983 "also constitute a violation of the Constitutional and Statutory laws of the State of Louisiana."  Record Document 1, p. 10.

---

[7] The Court is perplexed by Easter's suggestion that today's ruling was preordained.  Prior to this ruling, the Court has given no indication of its disposition toward the motion before it.

Here, the Court finds that the state law claim of negligence against Shemwell is too conclusory and generic to state a claim for relief under a 12(c) standard.  While viewing Easter's allegations in a favorable light, the Court is not required to accept the veracity of conclusory allegations or permit claims to proceed when they only present a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678-79.  Her claims are merely legal conclusions framed as factual allegations, presuming Shemwell's negligence because Easter was arrested and detained based on a warrant that she claims emanated from Shreveport City Court. This assumption is not enough; it lacks factual allegations articulating the duty Shemwell owed to Easter and, more importantly, how that duty was breached.  Her allegations do not allege how Shemwell caused her arrest and detention either; instead, she asks the Court to presume that Shemwell contributed, at least in part, to this harm.  As a result, for the reasons outlined above, Easter's state law claims against Shemwell are **DISMISSED** based on her failure to state a claim under Rule 12(c).

**IV.   Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Judgment on the Pleadings filed by Robert

Shemwell [Record Document 27] is hereby **GRANTED**.

      **IT IS FURTHER ORDERED** that Easter's claims against Robert Shemwell are

**DISMISSED WITH PREJUDICE**.

      **THUS DONE AND SIGNED** on this 27th day of October, 2015.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE