UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**NIDA M. EASTER**  **CIVIL ACTION NO. 14-0967**

**VERSUS**  **JUDGE ELIZABETH ERNY FOOTE**

**CHARLIE CALDWELL, ET AL.**  **MAGISTRATE JUDGE HORNSBY**

## MEMORANDUM RULING

Before this Court is a Motion for Judgment on the Pleadings submitted by Defendant Ollie Tyler, the mayor of Shreveport, in her official capacity ("the City").[1] Record Document 42.  The Plaintiff, Nida M. Easter ("Easter"), filed this suit against Tyler, as well as former Shreveport Police Chief Willie Shaw, Shreveport City Marshal Charlie Caldwell, Jr., Caddo Sheriff Steve Prator, and Shreveport City Court Clerk Robert Shemwell, alleging that their roles in her purportedly unlawful arrest violated 42 U.S.C. § 1983 and Louisiana tort law. Record Document 1.  The Court has previously dismissed Easter's claims against City Marshal Caldwell, Sheriff Prator, Chief Shaw, and City Court Clerk Shemwell.  Record Documents 26 and 37.  For the reasons stated below, the Court hereby **GRANTS** the City's Motion for Judgment on the Pleadings and **DISMISSES** all of Easter's claims against the City.

---

[1] The Plaintiff initially filed suit against Cedric Glover, who was then the mayor Shreveport.  After Tyler became mayor, the Court substituted her as the proper Defendant pursuant to Federal Rule of Civil Procedure 25(d).  Record Document 25.

### I. Factual and Procedural Background

The Court and the parties are familiar with the background of this suit. A previous opinion by this Court captures most of the relevant facts and procedural developments:

> On the night of Friday, May 10, 2013, Easter alleges that she was unlawfully arrested and detained overnight at Caddo Correctional Center in Shreveport, Louisiana, by deputies with the Caddo Parish Sheriff's Office after visiting an inmate at the center. Record Document 1, pp. 2-3. Deputies stated that she had an outstanding warrant dating back to 2008, despite her protestations to the contrary. Id. at p. 4. The following night deputies transferred Easter to Shreveport City Jail and the custody of the Shreveport Police Department, after explaining the warrant at issue originated from Shreveport City Court. Id. at pp. 5-6. Once there, she was eventually booked with "contempt of court," was released on bond the next morning, Sunday, May 12, 2013, and was provided with a summons to appear in Shreveport City Court. Id.
>
> Easter retained counsel and then arrived on the scheduled morning to discover that she was not on the court's docket. Id. Eventually, after questions went unanswered from both the Clerk of Court and the Office of the City Marshal, minutes from a civil case filed in 2006 were located that indicated a warrant had been issued for Easter's failure to appear at a judgment debtor exam. Id. at pp. 6-7. However, this warrant had been recalled before her arrest on May 10, 2013. Id.
>
> Based on these events, Easter sought federal and state relief from five Defendants, each in his official capacity: Willie Shaw, Shreveport Chief of Police; Charlie Caldwell, Jr., Shreveport City Marshal; Steve Prator, Caddo Sheriff; Robert Shemwell, Clerk of Court for the Shreveport City Court; and Cedric Glover, Mayor of the City of Shreveport. Id. at pp. 1-2, 10. The Complaint, at its core, alleges that Easter's arrest and detention violated her fourth amendment rights and that the Defendants' roles (in their official capacities) in the arrest make them liable as municipal entities under 42 U.S.C. § 1983. Easter cast her § 1983 claims in two different forms. First, she alleges Defendants' failure to properly train and monitor their personnel on the performance and operation of their warrant systems contributed to her improper detention and violated 42 U.S.C. § 1983 (supervisor liability). Id. at p. 8. Second, she claims that the "implementation of a custom, policy or official act of defendants" caused her arrest and violated 42 U.S.C. § 1983 (liability for customs or policies). Id. at 10. The Complaint also asserts that Defendants' conduct violated Louisiana Civil Code Article 2315, Louisiana's general tort provision. Id. at p. 1, 10.

> The Court dismissed Easter's claims against Chief Shaw, City Marshal Caldwell, and Sheriff Prator. Record Document 26, p. 1. The Court dismissed the claims against Chief Shaw because they were redundant of the claims against Mayor Glover [now Mayor Tyler] given that a suit against a police chief in his or her official capacity is one in the same as a suit against the municipality. Id. at pp. 3-4. The Court dismissed the claims against Sheriff Prator and Marshal Caldwell pursuant to Federal Rule of Civil Procedure 12(b)(6). Regarding Easter's allegations that the policies or customs of Sheriff Prator and Marshal Caldwell violated § 1983, the Court found that they were too generic and conclusory to be entitled to relief: the claims against Marshal Caldwell failed to identify a specific objectionable policy or custom and the claims against both Marshal Caldwell and Sheriff Prator failed to explain how the alleged custom or policy caused Easter's unlawful arrest. Id. at pp. 7-14. Likewise, the Court found that the allegations that Sheriff Prator's and Marshal Caldwell's failure to properly train and monitor their personnel violated § 1983 were too conclusory to be entitled to relief: they failed to identify the inadequacy of the training or how that inadequacy caused Easter's unlawful arrest. Id. at pp. 14-20. Finally, the Court found Easter's claims of tort liability were too conclusory to withstand 12(b)(6) scrutiny. Id. at pp. 25-26.

Record Document 37, pp. 2-4. For the reasons that it dismissed her claims against City Marshal Caldwell and Sheriff Prator, the Court also dismissed pursuant to Rule 12(c) Easter's claims against City Court Clerk Shemwell. Record Document 37.

The City, the only Defendant remaining in this suit, now moves the Court to dismiss the claims against it pursuant to Rule 12(c) and for the same reasons the Court has dismissed many other Defendants in this suit, namely, that Easter has failed to set forth facts in her complaint that give rise to claims of municipal § 1983 liability. Record Document 42-1.

Easter, however, offers novel arguments in defense of her complaint. First, she argues that three Supreme Court cases addressing the exclusionary rule support the viability of her claims. Second, she argues that recently acquired records from the Caddo

Parish Sheriff's Office of outstanding warrants show that her experience was not an isolated incident but was instead indicative of systemic record-keeping problems at Shreveport City Court. In response to this latter argument, the City moved to strike the exhibits of outstanding warrants, arguing that they are neither authentic nor relevant. Record Document 52. Easter in turn filed a response to the City's motion to strike.

## II.     Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that a party may move for a judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ." Fed. R. Civ. P. 12(c). "The central issue [in a 12(c) motion] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (quoting Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)). A motion for judgment on the pleadings pursuant to Rule 12(c) is therefore subject to the same standard as a motion to dismiss under Rule 12(b)(6). See Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2008).

To survive such a challenge under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts are required to accept the plaintiff's "well-pleaded" facts as true and construe the complaint in a light favorable to that plaintiff. In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted). Nonetheless,

courts are not required to accept the veracity of legal conclusions framed as factual allegations. Iqbal, 556 U.S. at 678 (reasoning that under Rule 8, it is not sufficient to merely recite a cause of action's elements with supporting conclusory statements). Overall, determining when a complaint states a plausible claim is a context-specific task, requiring courts to rely on judicial experience and common sense to assess when a complaint crosses the line from conceivable to plausible. Id. at 678-80.[2]

### III. Discussion

In general, establishing a § 1983 claim requires two basic elements: (1) a plaintiff was deprived of a constitutional right or a right secured by the laws of the United States, and (2) this deprivation was caused by a state agent acting under the color of law. West v. Atkins, 487 U.S. 42, 48 (1988). In its previous rulings on this matter, the Court assumed that Easter met both of these elements. See Record Document 37, p. 6 n.5. The Court extends that assumption to Easter's claims against the City. But because Easter is suing the City as a municipal entity, rather than Mayor Tyler in her individual capacity, she must meet a higher threshold of liability to be entitled to relief under § 1983. Specifically, Easter has alleged that the City is liable under § 1983 based on two alternate theories of municipal liability: a failure of the City to properly train its personnel or a custom or policy

---

[2] A claim is facially plausible when a plaintiff pleads factual content that permits the court to reasonably infer a defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678-79. This plausibility standard is not a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

by the City that was the moving force of her presumptively illegal arrest.

    A.    <u>Supervisory Liability under 42 U.S.C. § 1983</u>

The City urges the Court to dismiss Easter's claim that the City violated § 1983 by failing to properly train and monitor personnel at Shreveport City Court involved in maintaining accurate records of its warrants. To establish a failure-to-train claim against a municipality under § 1983, a plaintiff must also demonstrate "(1) inadequate training procedures; (2) that inadequate training caused the [violation of plaintiff's constitutional rights]; and (3) the deliberate indifference of municipal policymakers." <u>Pineda v. City of Houston</u>, 291 F.3d 325, 331-32 (5th Cir. 2002); <u>see</u> <u>also</u> <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

The City argues that Easter has failed to allege facts in her complaint that support any of these elements because "she has not (1) identified any defects in the City's training procedures; (2) alleged a deficiency in training caused her constitutional violation; and (3) asserted deliberate indifference by the City." Record Document 42-1, p. 5. The Court agrees. As it has expressed in its prior opinions addressing the viability of Easter's failure-to-train claims, Easter's allegations of inadequate training procedures are too conclusory to withstand <u>Twombly</u> scrutiny. Easter makes three allegations that could be relevant to a failure-to-train claim under § 1983. First, she alleges that the City is "guilty of gross negligence in ensuring the integrity of its data base pertaining to arrest warrants, their issuance, their disposition and/or their recall." Record Document 1, p. 8. Next, she asserts

that the City "failed to monitor the performance of the systems they ordered installed and failed to properly train their personnel employed to operate these systems." Id. Finally, she alleges that the "[f]acts of this case and numerous others will show the data bases used by these defendants are insufficiently monitored and often out of date." Id. Without more, these statements only restate the first and third elements of a failure-to-train claim, a fatal characteristic for any claim under Twombly. See Twombly, 550 U.S. at 557; Pineda, 291 F.3d at 331-32. Because Easter cannot plead any specific facts to demonstrate plausibility of success on any of the three elements for failure-to-train § 1983 liability, see Iqbal, 556 U.S. at 678-80, the Court must dismiss Easter's failure-to-train claim against the City pursuant to Rule 12(c).

    B.    <u>Liability for Customs or Policies under 42 U.S.C. § 1983</u>

The City also moves the Court to dismiss Easter's claim that the policies and customs of the City entitle her to § 1983 relief. In this context, a successful claim of § 1983 municipal liability requires proof of "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

The City argues that Easter has not satisfied the second or third element of a Monell custom or policy claim because she has not identified an official policy and she has not articulated how such a policy was the moving force behind her arrest. Consistent with its previous opinions, the Court again agrees. With respect to the second element, an "official

policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations" or by a custom that is such a persistent and widespread practice of city officials that, although not officially promulgated, it fairly represents a municipal policy. Id. at 579 (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)). Easter's only allegation of an offending policy or custom by the City is that there was a failure to monitor the performance of the City Court's arrest warrant database. Record Document 1, p. 8. This statement, which is again conclusory, does not either suggest an official policy or a persistent or widespread practice. See Twombly, 550 U.S. at 55.

      Easter has also failed to provide facts in her complaint that could plausibly satisfy the third element of Monell custom or policy liability, i.e., the policy or custom was the moving force behind her arrest. Proving this element requires two showings: (1) that the challenged policy or custom was either unconstitutional or promulgated with deliberate indifference toward its known or obvious unconstitutional effects and (2) that the challenged policy caused plaintiff's constitutional deprivation. Piotrowski, 237 F.3d at 579-80. Deliberate indifference is a stringent standard: it requires "proof that a municipal actor disregarded [the] known or obvious consequence" that constitutional violations would result and usually demands notice of a "pattern of similar constitutional violations." Porter, 659 F.3d at 446-47 (citing Connick, 131 S. Ct. at 1360). In addition, the plaintiff must describe "a direct causal link between the municipal policy and the constitutional deprivation," Piotrowski, 237 F.3d at 580, which "cannot be conclusory; it must contain specific facts," Kitchen v. Webre, No. 13-6705, 2014 WL 2566065, at *3 (E.D. La. May 14,

2014) (quoting Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997)). Easter's complaint alleges that "the violations of her constitutional rights were caused in part by the implementation of a custom, policy, or official act of [the City]." Record Document 1, p. 10. Here again, this language restates an element of a cause of action without providing any specific facts to sustain her claim. Because Easter's complaint does not provide facts to plausibly sustain the second or third elements of a Monell custom or policy claim, the Court must dismiss this claim pursuant to Rule 12(c).

With respect to both of her § 1983 claims, Easter offers two arguments in opposition to the City's motion to dismiss that she did not raise in opposing the other Defendants' motions to dismiss. She first argues that the following three Supreme Court cases support the viability of her claims: Herring v. United States, 555 U.S. 135 (2009), Arizona v Evans, 514 U.S. 1 (1995), and Illinois v. Gates, 462 U.S. 213 (1983). Although Easter's analyses of these cases often relies on the dissents in those opinions rather than their holdings, two of the cases, Herring and Evans, nevertheless offer relevant precedent, namely, that an arrest based on a warrant that appears outstanding according to the arresting officer's records but in fact does not exist, violates the Fourth Amendment. Herring, 555 U.S. at 137; Evans, 514 U.S. at 3-4. While the Court in both of these cases ultimately held that the exclusionary rule does not apply to evidence seized as result of such a warrantless arrest, those holdings relied on the explicit assumption that such an arrest violated the Fourth Amendment. Herring, 555 U.S. at 137 ("The parties here agree that the ensuing arrest is still a violation of the Fourth Amendment . . . ."); Evans, 514 U.S. at 3-4 ("This

case presents the question whether evidence seized in violation of the Fourth Amendment by an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant—a record that is later determined to be erroneous—must be suppressed . . . ."). These cases, however, are unavailing to Easter because the question before the Court is not whether the warrantless arrest of Easter violated the Fourth Amendment; the question is whether the City is liable for that violation under § 1983. Because Easter has not alleged that Tyler's actions in her individual capacity caused her arrest, she can prevail on the second question only if she meets one of the high municipal liability standards described by the Court above. Neither Herring nor Evans informs the analysis of those municipal liability standards. Consequently, the Court remains persuaded that the facts alleged in Easter's complaint do not state a plausible claim that the City is liable for her arrest under § 1983.

      Easter also argues that a list of active warrants published by the Caddo Parish Sheriff's Office, which she attached as an exhibit to her response to the City's 12(c) motion to dismiss, show that defects in the Sheriff's record keeping of warrants are pervasive–presumably widespread enough to constitute a custom or practice under Monell. Record Document 46-1. Easter offers as an example of such a defect the fact that one of the outstanding warrants was issued in 1987 for a man who was then 71 years old. This argument is problematic for several reasons. First, reliance on an exhibit attached to a response to a defendant's motion is inappropriate in a 12(c) motion. Because the motion before the Court is a motion for judgment on the pleadings, the scope of the Court's inquiry

does not extend beyond the pleadings in this matter. Thus, an attachment in a response to another party's motion is beyond the scope of the Court's inquiry today. Second, even if the Court were to take the warrant list into account in ruling on the City's 12(c) motion, the list does not establish municipal liability for the City because evidence that a warrant or a person subject to a warrant is relatively old does not mean the warrant is not valid. Easter cites the warrant list as evidence that there are errors in the list similar to the error that caused her own arrest. But Easter was arrested based on a warrant that was quashed, not on a valid warrant that had been outstanding for a relatively long period of time. And nowhere in this list does Easter show that there is a warrant that has been quashed or is otherwise not outstanding. Consequently, even if the Court were to consider Easter's attachment, it does not prevent the Court from dismissing Easter's claims against the City pursuant to Rule 12(c). The Court therefore also denies the City's motion to quash Easter's exhibit because the motion is moot.

    C.    <u>State Law Liability</u>

The City urges this Court to decline to exercise supplemental jurisdiction over Easter's state law claim pursuant to 28 U.S.C. § 1367(c). Previously the Court was unable to dismiss Easter's state law claims under § 1367 because there remained Defendants in the suit who had not moved for dismissal. Record Document 26, p. 21 n.9. The City, however, is the last Defendant in this suit. Consequently, the Court now declines to exercise supplemental jurisdiction over Easter's state law claim. <u>See</u> 28 U.S.C. § 1367(c); <u>Certain Underwriters at Lloyd's, London v. Warrantech Corp.</u>, 461 F.3d 568, 578 (5th Cir.

2006) ("[I]t is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case.").

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Judgment on the Pleadings filed by Defendant Ollie Tyler Record Document 42 is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Easter's claims under 42 U.S.C. § 1983 against Defendant Ollie Tyler are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Ollie Tyler's Motion To Strike Exhibits, Record Document 52 is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Easter's claim under state law against Defendant Ollie Tyler is **DISMISSED WITHOUT PREJUDICE**.

A judgment consistent with this memorandum ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 26th day of September, 2016.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE